**KNAUR v. JONES et al.   (No. 1081–4971.)**

Commission of Appeals of Texas, Section A.
April 25, 1928.

1. **Appeal and error** ⊜⟶909(5)—**Reviewing court must presume plaintiff suing on contract fulfilled obligations, where there are no pleadings or evidence otherwise.**

Where there are no evidence or pleadings to the contrary, the reviewing court must presume that plaintiff suing on a contract fulfilled his obligations.

2. **Partnership** ⊜⟶83—**In suit on contract to run departments of defendants' stores, plaintiff held, under contract, entitled to percentage of gross sales, regardless of profit.**

In suit on his contract to take over and run the phonograph departments of defendants' stores, plaintiff *held*, entitled, under contract provision that he was to receive 15 per cent. of the gross sales when cash sales and collections were equal to that amount or more, to such percentage, regardless of whether there was a final gain or loss in the operation of the business.

3. **Partnership** ⊜⟶20—**Contract under which plaintiff agreed to run phonograph departments of defendants' stores on percentage basis held to place parties in partnership relation.**

Contract under which plaintiff agreed to take over and run the phonograph departments of defendants' stores on a percentage basis *held*, to place the parties in a relationship in the nature of that of a partnership.

4. **Partnership** ⊜⟶283—**Storekeepers' compromising notes and bills receivable after termination of partnership relation with plaintiff running department on commission were converters.**

Where plaintiff, who had agreed to take over and run the phonograph departments of defendants' stores on a percentage basis, sued on such contract after termination thereof by mutual agreement, storekeepers' (defendants') acts in compromising notes and bills receivable and affecting trade-ins without consent of plaintiff, who had been running departments, after dissolution of relationship, *held*, a conversion of such bills and notes.

5. **Partnership** ⊜⟶283—**Storekeepers who had turned over departments to plaintiff on commission held chargeable with reasonable value of notes and bills receivable compromised without plaintiff's consent after termination of contract.**

Where plaintiff had taken over, to run on a percentage basis, the phonograph departments of defendants' stores it was *held*, in plaintiff's suit for percentage payments after dissolution of relation, that defendants should be charged with the reasonable value of the bills receivable and notes at the time of the termination of the contract and dissolution of the partnership relation, thus obviating necessity of receivership.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by J. S. Knaur, Jr., against J. L. Jones and others. A judgment for plaintiff was, on appeal, reversed and remanded by the Court of Civil Appeals (299 S. W. 946), and plaintiff brings error. Judgments of the district court and of the Court of Civil Appeals reformed and affirmed in part, and reversed and remanded in part.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for plaintiff in error.

Marion S. Church and Carter & Wilson, all of Dallas, for defendants in error.

CRITZ, J. This suit was originally filed in the district court of Dallas county, Tex., by J. S. Knaur, Jr., plaintiff in error, against Jones-O'Neal Furniture Company, a copartnership composed of J. L. Jones, E. C. O'Neal, and J. A. Allen, and against the individual members of said partnership. Trial in the district court resulted in judgment for the plaintiff in error against the defendants in error for $2,322.51, with interest at 6 per cent. from August 1, 1925. The defendants in error appealed to the Court of Civil Appeals for the Fifth District, which court reversed the trial court and remanded the cause. 299 S. W. 946. The case is now before this court on writ of error granted on application of J. S. Knaur, Jr. A decision of the issues in this case involves a construction of the written contract between them, and the pertinent sections involved are as follows:

"The State of Texas, County of Jefferson.

"Whereas, the Jones-O'Neal Furniture Company, a partnership composed of E. C. O'Neal, J. L. Jones and J. A. Allen, doing business in the towns of Beaumont, Port Arthur, Orange, Silsbee and Port Neches, having at said places furniture stores, and in connection therewith a department known as the phonograph department, said department composed of phonographs of various kinds, phonograph records, and radios, and will hereinafter in this contract be referred to as the department; and

"Whereas, they desire to turn the department over to and place it under the management of J. S. Knaur, Jr., on the following terms and conditions; and

"Whereas, Mr. Knaur, Jr., is willing to and does by these presents accept the same;

"This agreement entered into this the 17th day of March, A. D. 1925, witnesseth:

"(1) The Jones-O'Neal Furniture Company agrees ·to and does hereby turn over to and place under the control of J. S. Knaur, Jr., the department at its stores in Beaumont ~~(except the stores on Pearl street)~~, Port Arthur, Silsbee, Port Neches, and Orange, Texas. * * *

"(5) It is further agreed and understood by and between the parties that the Jones-O'Neal Furniture Company is to receive 10% of the gross sales from the department, which is to be quarterly.

"(6) It is further agreed and understood· by and between the parties that the Jones-O'Neal

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Furniture Company is to receive 8% interest on all deferred payments of stock sold out of the department.

"(7) It is further agreed and understood by and between the parties that the Jones-O'Neal Furniture Company is to receive one hundred dollars ($100.00) per month for the use of the space occupied by the department at Beaumont, and also one hundred dollars ($100.00) per month for the use of the space occupied by the department at Port Arthur.

"(8) It is further agreed and understood by and between the parties that no rent shall be paid by the department at the stores at Port Neches, Silsbee, and Orange, but the managers of the respective stores shall receive in lieu thereof 10% of the gross sales of the department, and this amount to be paid from his receipts or collections, and when the bill for any merchandise is collected or any part thereof, the manager under whom the collection is made shall receive a second 10% for the gross sales so collected, that is, the managers shall receive 10% for sales and 10% for collection, in the manner above indicated. * * *

"(15) It is further agreed and understood by and between the parties hereto that the Jones-O'Neal Furniture Company will, and it agrees to, advertise the goods, wares, and merchandise, of the department to an amount not to exceed 5% of the gross sales of the department, and this amount is to be based upon the quarterly sales; and it is further agreed that all advertising and display is to be under the direction and supervision of J. S. Knaur, Jr. * * *

"(16) It is further agreed and understood that the Jones-O'Neal Furniture Company shall receive from the department in its quarterly settlement a refund for all amounts that have been paid by the Jones-O'Neal Furniture Company to cover premiums on workmen's compensation insurance covering employees of the department, and in this connection J. S. Knaur, Jr., agrees to furnish, when requested, a pay roll of the department.

"(17) It is further agreed and understood by and between the parties hereto and J. S. Knaur, Jr., agrees to furnish not less than two salesmen at Port Arthur and not less than two salesmen at Beaumont, and not less than one saleslady at Beaumont, and not less than one saleslady at Port Arthur, and should the business require, he agrees to employ and keep employed adequate help to maintain the business in a first-class condition, all of said help shall be paid by J. S. Knaur, Jr.

"(18) It is further agreed and understood by and between the parties and J. S. Knaur, Jr., agrees to devote his entire time to the furtherance of the business of the department, dividing his time between the various stores as the business requires. * * *

"(21) It is further agreed and understood by and between the parties hereto and J. S. Knaur, Jr., is to receive 15% of the gross sales when the cash sales and collections are equal to that amount or more.

"(22) It is further understood and agreed that J. S. Knaur, Jr., is to receive at the end of every quarter, after the payment of all rents due, all charges for advertising and deductions of all commissions drawn by J. S. Knaur, Jr., as well as all other amounts drawn by him or advanced to him, one-half (1/2) of the cash on hand or so much thereof as is necessary to pay off and discharge all commissions then due J. S. Knaur, Jr., from the operation of the department. * * *

"(27) It is further agreed and understood by and between the parties that all profits are to be divided in the manner herein set out, and on the basis of delivered cost of the merchandise, and that J. S. Knaur, Jr., is to receive the difference between the delivered cost of the goods, wares and merchandise and the price for which the goods, wares, and merchandise are sold. This basis, however, is to take into consideration the items and deductions hereinabove mentioned in this contract. * * *

"(29) It is further agreed and understood by and between the parties hereto that J. S. Knaur, Jr., shall be and he is held responsible for all phonograph records that are delivered to the department and in case of loss, the loss shall be his and not the Jones-O'Neal Furniture Company. * * *"

[1] It will be noted that under article 21 of the above contract Knaur is to receive 15 per cent. of the gross sales when the cash sales and collections are equal to that amount or more. Article 17 of the contract, which prescribes what Knaur is to do and furnish, provides that he, at his own expense, shall furnish not less than two salesmen in Port Arthur, and not less than two salesmen in Beaumont, and not less than one saleslady at Beaumont, and not less than one saleslady at Port Arthur, and should the business require, he agrees to employ and keep adequate help to maintain the business in a first-class condition. All of this is to be done at the expense of the said Knaur. Under article 18, Knaur also agrees to devote all of his own time to the business. We must presume that Knaur, in all things, fulfilled these conditions, as there are no pleadings or evidence to the contrary.

Under article 22 Knaur is to receive, at the end of every quarter, after the payment of the rent and other things provided in said article 22, one-half of the cash on hand or so much as is necessary to pay off and discharge all commissions then due said Knaur from the operation of the department. The commissions here referred to could have no reference to anything other than the 15 per cent. of the gross sales provided for under article 21 above mentioned.

Under article 27 it is provided:

"That all profits are to be divided in the manner herein set out, and on the basis of delivered cost of the merchandise, and that J. S. Knaur, Jr., is to receive the difference between the delivered cost of the goods, wares, and merchandise, and the price for which the goods, wares, and merchandise are sold. This basis, however, is to take into consideration the items and deductions hereinabove mentioned."

[2] Now, the contract clearly provides that Knaur is to receive a fixed payment of 15 per cent. He is to devote his whole time to the business and is to furnish the help named in article 17 above mentioned. All of this

is to be done at the expense of Knaur, and no part of it can come out of the business. Clearly, under the provision of the contract above mentioned, Knaur is due under the contract the 15 per cent. of the gross sales as a fixed charge against the business, and that regardless of whether there is a final gain or loss in the operation of the business. It is shown that the total gross receipts amounted to $18,567.92; 15 per cent. of this amount would be $2,785.18; Knaur has received $1,645.82; this leaves a balance due him as commissions of $1,139.36. Under the terms of the contract Knaur is entitled to recover this amount, with 6 per cent. interest from August 1, 1925.

This brings us to a consideration of what Knaur is entitled to receive under article 27 of the contract. Under this article it is provided:

"That all profits are to be divided in the manner herein set out, and on the basis of the delivered cost of the merchandise, and that J. S. Knaur, Jr., is to receive the difference between the delivered cost of the goods, wares, and merchandise and the price for which the goods, wares, and merchandise are sold. This basis, however, is to take into consideration the items and deductions hereinabove mentioned in this contract."

Now, it is shown by the evidence and the findings of the trial court that when the business was terminated by mutual consent that there was left on hand uncollected notes and bills receivable amounting to $8,561.10. It is further shown that the defendants in error retained possession of these notes and bills receivable after the termination of the contract and that said defendants in error have since exercised sole authority over them and have attempted to collect thereon and compromise by trade-ins and repossessions, and to charge expenses of collection against the appellee. It is further shown that after the termination of the contract Knaur made no objection to this, and did not in any manner offer to assist in making collections on these notes and bills receivable, but, on the other hand, left without saying anything to the defendants in regard to these matters, leaving said notes and bills receivable in the possession of the defendants.

[3-5] We think that the Court of Civil Appeals correctly held that the relations of the parties under the contract were in the nature of a partnership. This being the case, upon a dissolution of the partnership, which was effected by the termination of the contract by mutual consent, the power of any one partner to act for or bind the other partner was at an end. 20 R. C. L. 968; White v. Tudor, 24 Tex. 639, 76 Am. Dec. 126; Kendall v. Riley, 45 Tex. 20. It follows that the defendants in error had no authority to compromise or affect trade-ins on said notes and bills receivable and that they, in taking charge of said notes and bills receivable and treating the same as their own, have in law converted them, and Knaur has the right to so treat their actions. However, we do not believe that it would be equitable under the facts of this case to charge the defendants in error with the full face value of the said notes and bills receivable. They should be charged, in effecting a final settlement under article 27 of the contract, with their reasonable value at the time of the termination of the contract and dissolution of the partnership. This will obviate any necessity of a receivership. Further, it is shown that the defendants in error have already collected, compromised, etc., more than $6,000 of said notes and bills receivable, and that they in so doing have effected compromises and trade-ins, and no good purpose could be subserved at this late day by the appointment of a receiver.

Whether defendants are due to pay to Knaur anything further under article 27 of the contract will depend on what the real value of the notes and bills receivable are found to have been on the date of the termination of the contract. If, after ascertaining their real value at the time mentioned, there are any net profits shown, under said article 27, then such net profits should be paid by the defendants in error to Knaur.

We therefore recommend that the judgment of the Court of Civil Appeals and the judgment of the trial court be reformed and that judgment be here rendered for the plaintiff in error, against the defendants in error, for $1,139.36, with interest at the rate of 6 per cent. per annum from August 1, 1925. We further recommend that the balance of the cause of action asserted by the plaintiff in error be reversed and remanded to the district court for a new trial in conformity with this opinion. We further recommend that the plaintiff in error pay all costs in the Court of Civil Appeals and that the defendants in error pay all costs in this court and in the district court.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals in part reversed, and cause in part remanded, and said judgments are in part reformed and affirmed, as recommended by the Commission of Appeals.